*This opinion is subject to revision before final publication in the Pacific Reporter*

**2013 UT 53**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

DENNIS NELSON,
*Petitioner,*

*v.*

CITY OF OREM, MICHAEL LARSEN,
and DEPARTMENT OF PUBLIC SAFETY,
*Respondents.*

No. 20120626
Filed August 19, 2013

On Certiorari to the Utah Court of Appeals

Attorneys:

B. Kent Morgan, Phillip W. Dyer, Salt Lake City, for petitioner

Stanley J. Preston, Bryan M. Scott, Brandon T. Crowther,
Salt Lake City, for respondents

CHIEF JUSTICE DURRANT, authored the opinion of the Court,
in which ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, JUSTICE PARRISH, and JUSTICE LEE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1    Officer Dennis Nelson was terminated from his position as a police officer with the Orem City Police Department (OCPD) after using excessive force during a booking at Orem City Jail. Both the Orem City Employee Appeals Board (Board) and the court of appeals upheld Officer Nelson's termination. The court of appeals reviewed the Board's decision for an abuse of discretion and agreed with the Board that OCPD's decision to terminate Officer Nelson was not inconsistent with prior instances of discipline under OCPD's excessive force policy. Also, the court concluded alternatively that the Board persuasively justified any disparate application of OCPD's policy. Finally, the court rejected Officer Nelson's claim that the Board violated his procedural due process

rights at his hearing by (1) refusing to hear his objections while entertaining OCPD's objection and (2) allowing OCPD's expert to testify despite having previously consulted with Officer Nelson.

¶2    We granted certiorari to consider both the court of appeals' application of the abuse of discretion standard of review and its decisions regarding (1) OCPD's consistent application of its excessive force policy and (2) Officer Nelson's procedural due process arguments. We now affirm the court of appeals' decision. We first conclude that the court of appeals' authority to review the Board's decision is limited by statute to review for an abuse of discretion. Because the court of appeals did not err in applying an abuse of discretion standard of review, we do not reach the court's alternative holding that the Board persuasively justified any disparate treatment of Officer Nelson. Finally, we conclude that the court of appeals correctly determined that any procedural due process violations at the Board's hearing were harmless.

## BACKGROUND[1]

¶3    Officer Nelson was hired as a police officer by OCPD in 1995. OCPD then terminated Officer Nelson's employment on October 29, 2009, following its investigation into his use of force during a booking at Orem City Jail. Prior to his termination, Officer Nelson had not previously been disciplined. During his near fifteen-year career with OCPD, Officer Nelson had an average performance evaluation rating of 3.53 on a scale of 1–5.

¶4    On September 18, 2009, Officer Nelson responded to a request from officers of Utah County Major Crimes Task Force to transport an arrestee, Mr. Fox, to jail. Mr. Fox had been placed under arrest for resisting the execution of a search warrant. At the time of transport, however, Officer Nelson was unaware of the circumstances surrounding Mr. Fox's arrest.

¶5    After arriving at the jail, Officer Nelson removed Mr. Fox's handcuffs and conducted a preliminary search of Mr. Fox. At the time, Mr. Fox weighed approximately 155 pounds, and Officer Nelson weighed approximately 280 pounds. The room was recorded by two cameras at different vantage points. Officer Nelson

---

[1] Officer Nelson does not challenge the Board's factual findings. We accordingly recite the facts consistent with the Board's findings as set forth in its decision.

instructed Mr. Fox to turn out his pockets and remove a string bracelet from his wrist. Mr. Fox removed the bracelet, tossed it on the floor, and turned out his pockets.

¶6 Officer Nelson twice asked Mr. Fox to pick up the bracelet and place it on a nearby counter. To the second request, Mr. Fox replied, "It's all yours." He casually swung his arms back and brought his palms together in front of his chest as he made his reply. Using expletives, Officer Nelson again asked Mr. Fox to pick up the bracelet. He then immediately grabbed Mr. Fox and pushed him toward a door that led to a nearby jail cell. Mr. Fox extended his left hand and grabbed the door frame. Officer Nelson then pushed Mr. Fox into the door frame, causing Mr. Fox to release his grasp. Officer Nelson then directed Mr. Fox into the left corner of the room and took Mr. Fox to the ground. After placing Mr. Fox on his stomach, Officer Nelson put his right knee on Mr. Fox's back before straddling him. Officer Nelson then put Mr. Fox into a control hold by placing his left arm behind his back and moving it up towards his head.

¶7 Mr. Fox sustained a cut above his right eye when Officer Nelson forced him to the ground. When Mr. Fox inquired about medical treatment, Officer Nelson told him to "shut up" and then called for medical assistance on his radio. Officer Nelson, while maintaining Mr. Fox on his stomach with his left arm behind his back in a control hold, initiated an expletive-laden conversation. When Mr. Fox objected to being run "like a rat," Officer Nelson grabbed Mr. Fox's right arm, forced it behind his back, and then pushed it up toward Mr. Fox's head so that both Mr. Fox's arms were behind his back in a control hold. As the dialogue continued, Officer Nelson pushed Mr. Fox's arms several inches up his back toward his head, apparently causing Mr. Fox distress and pain. Officer Nelson admitted that, at this point, he was using force to inflict pain and to punish Mr. Fox.

¶8 Officer Nelson then moved his right knee to Mr. Fox's back and began to apply pressure. He "put substantial[,] if not most of his weight" into Mr. Fox's back, and Mr. Fox grunted in apparent pain. The pressure on Mr. Fox's back appeared to strain his voice and caused his legs to move and curl up in apparent pain.

¶9 The dialogue continued as Officer Nelson called Mr. Fox a "piece of shit" and told Mr. Fox to "shut your fucking mouth, I don't want to hear another word out of you. Not a word." As Officer Nelson said this, he pushed both of Mr. Fox's arms higher up his back so that they were nearly touching the back of his head,

again causing Mr. Fox to grunt in apparent pain. A few moments later when Mr. Fox protested that Officer Nelson might break his wrists, Officer Nelson appeared to shift his weight to put more pressure on Mr. Fox's back for approximately forty-one seconds.

¶10  Officer Nelson and Mr. Fox were then quiet for about sixty seconds during which Mr. Fox barely moved and began to breathe heavily. Officer Nelson then asked Mr. Fox if he was having trouble breathing. When Mr. Fox did not respond, Officer Nelson moved him into a sitting position, keeping both arms behind his back in control holds. Officer Nelson maintained Mr. Fox in this position until backup arrived and placed Mr. Fox in handcuffs. In total, Officer Nelson controlled Mr. Fox on the ground for approximately three minutes and forty-two seconds. Mr. Fox did not fight or resist Officer Nelson during the encounter.

¶11  Lieutenant Giles of OCPD conducted a use of force review of the incident. He met with Officer Nelson, spoke with Mr. Fox by telephone, and reviewed the video of the incident. He concluded that Officer Nelson's use of force was "not justified and was in violation of established [OCPD] policies." He also concluded that Officer Nelson used physical force as punishment and such use was inappropriate.

¶12 Lieutenant Giles reported his conclusions to Captain Connor, who then conducted his own review of the incident. He reviewed Lieutenant Giles' report, watched the videos, and reviewed Officer Nelson's incident report. Captain Connor agreed that Officer Nelson had violated OCPD policies by using excessive force. He also concluded that Officer Nelson had been untruthful in the investigation of the incident because his account of the incident differed from the video evidence. As a result, Captain Connor issued Officer Nelson a Notice of Intent to Discipline/Terminate Employment.

¶13  Pursuant to OCPD procedures, Officer Nelson appealed his termination to Mr. Mike Larsen, the Orem City Director of Public Safety. Mr. Larsen met with Officer Nelson and Officer Nelson's counsel, but after reviewing the incident, Mr. Larsen upheld Captain Connor's decision to terminate Officer Nelson. Mr. Larsen issued his decision on October 29, 2009, and Officer Nelson's termination was official as of that date.

¶14  Officer Nelson then appealed his termination to the Board. On November 11, 2010, the Board issued its decision. The Board reversed the charge of dishonesty, and considered two other issues: (1) whether the facts supported the charges against Officer Nelson

and (2) whether the charges warranted termination. Regarding the first issue, the Board concluded that the facts were sufficient to support the charge that Officer Nelson used excessive force in violation of OCPD policy. First, it found that Officer Nelson used more force than reasonably necessary to do his job. Second, it found that he used force to inflict punishment, humiliation, and mental abuse. And, finally, it found that Officer Nelson's use of force did not qualify as self defense, protection of an officer, making a lawful seizure of an individual, prevention of escape, or bringing an unlawful situation under control, as is required by OCPD policy.

¶15  As to the second issue, the Board concluded that the charges warranted Officer Nelson's termination. In reaching that conclusion, the Board addressed two questions: (1) whether the sanction of termination was proportional to the charge of excessive use of force and (2) whether Officer Nelson's termination was consistent with previous sanctions imposed by OCPD. The Board determined that Officer Nelson's use of force "had the potential to significantly undermine the morale and discipline within [OCPD]" and that his termination was therefore proportional to the charge.

¶16  The Board also determined that Officer Nelson's termination was consistent with previous sanctions imposed by OCPD for violations of its excessive force policy, despite Officer Nelson's claim that OCPD merely suspended other officers for similarly egregious conduct.[2] Officer Nelson offered the example of Officer Scott Healy,[3] whom OCPD suspended in July 2000 for two weeks without pay for two separate incidents involving juveniles.[4] In the first incident, Officer Healy "grabbed [a] juvenile . . . and shoved him into the corner walls of [a] holding room and yelled at him"

---

[2] Consistent with the court of appeals' decision in this case, we "reference the OCPD rather than the Orem Department of Public Safety for simplicity and brevity," although the Orem Department of Public Safety is the respondent on appeal. *Nelson v. Orem City*, 2012 UT App 147, ¶ 9 n.3, 278 P.3d 1089.

[3] Officer Nelson cited multiple instances of inconsistent treatment to the Board but has since dropped all others and focused only on Officer Healy.

[4] At the hearing before the Board, OCPD offered evidence that Officer Healy's suspension was the most severe action it could have imposed, short of termination.

because the juvenile had made a flippant remark. In the second incident, again in response to disrespectful comments, Officer Healy "pushed [a] juvenile against [a] wall," "put his thumbs against his windpipe," and threatened to kill the juvenile. Officer Healy had also been disciplined four other times for violations not involving excessive use of force.

¶17 The Board concluded, however, that the incidents involving Officer Healy were factually distinguishable from Officer Nelson's use of force. First, the Board found that Officer Nelson placed Mr. Fox in unnecessary, painful control holds whereas there was no evidence that Officer Healy inflicted any pain or injury on either of the juveniles. Second, the Board found that Officer Nelson "continued to escalate the use of force" while Officer Healy "recognized his mistake and took immediate steps to correct it by backing off and de-escalating the situation." Finally, the Board found that Officer Nelson used force to injure and punish Mr. Fox. In contrast, the Board found that Officer Healy "reacted out of anger" and that there was no evidence that he used force to inflict pain or punishment. It thus concluded that the circumstances of Officer Healy's suspension could not "be used as a basis for a claim of inconsistent discipline."

¶18 Officer Nelson appealed the Board's decision to the Utah Court of Appeals. There, Officer Nelson argued that the Board erred in concluding that the sanction of termination was proportional to the charge of excessive force and that termination was not inconsistent with prior sanctions imposed by OCPD.[5] He also argued that the Board violated his procedural due process rights in two ways. First, he alleged that the Board rebuffed his attempts to raise objections during witness testimony but granted OCPD's objections. Next, he challenged the Board's decision to allow Mr. Wallentine, an expert witness, to testify on behalf of OCPD even though Mr. Wallentine had allegedly been privy to Officer Nelson's confidential information.[6]

¶19 The court of appeals upheld the Board's decision. The court applied an abuse of discretion standard of review and determined, among other things, that (1) Officer Nelson's termination was not inconsistent with prior sanctions under OCPD's policy and that,

---

[5] *Nelson*, 2012 UT App 147, ¶¶ 15–16.

[6] *Id.* ¶ 18.

more specifically, Officer Nelson and Officer Healy were not similarly situated; (2) alternatively, even if Officer Nelson and Officer Healy were similarly situated, the evolution of OCPD's experience in employee discipline and the public's expectations of police conduct justified any disparate treatment; and (3) Officer Nelson failed to identify any prejudice that resulted from the Board's alleged procedural due process violations.[7]

¶20 We granted certiorari to review the court of appeals' decision, including the court of appeals' application of the abuse of discretion standard of review. We have jurisdiction pursuant to section 78A-3-102(3)(a) of the Utah Code.

## STANDARD OF REVIEW

¶21 "On certiorari, we review for correctness the decision of the court of appeals, not the decision of the [Board]."[8] "The correctness of the court of appeals' decision turns, in part, on whether it accurately reviewed the [Board's] decision under the appropriate standard of review."[9]

## ANALYSIS

¶22 We first consider the appropriate standard of review for the Board's determination that Officer Nelson's termination was not inconsistent with prior sanctions under OCPD's excessive force policy. Because we conclude that the court of appeals did not err in applying an abuse of discretion standard of review, we do not consider the court's alternative holding that the Board persuasively justified any disparate treatment of Officer Nelson. Finally, we consider Officer Nelson's procedural due process arguments regarding the Board's treatment of his objections at the hearing and its decision to allow OCPD's expert to testify. We ultimately affirm the court of appeals' decision on these procedural issues.

---

[7] *Id.* ¶¶ 15, 33, 35–36.

[8] *State v. Levin*, 2006 UT 50, ¶ 15, 144 P.3d 1096.

[9] *Id.*

## I. THE COURT OF APPEALS DID NOT ERR IN APPLYING AN ABUSE OF DISCRETION STANDARD OF REVEW AS REQUIRED BY STATUTE, AND IT ACCORDINGLY DID NOT ERR IN AFFIRMING THE BOARD'S DECISION THAT OFFICER NELSON'S TERMINATION WAS NOT INCONSISTENT WITH OCPD POLICY

¶23 The parties agree that for Officer Nelson to successfully overturn his termination he must satisfy the two-part test applied by the court of appeals by showing "(1) that the facts do not support the action taken by [OCPD] or (2) that the charges do not warrant the sanction imposed."[10] According to the court of appeals, the second question breaks down into two sub-questions: "First, is the sanction proportional; and second, is the sanction *consistent with previous sanctions imposed by the department pursuant to its own policies*."[11] Officer Nelson's challenge on appeal focuses on the appropriate standard of review for the second sub-question: the consistency issue.

¶24 In reviewing the Board's conclusion that Officer Nelson's termination was not inconsistent with prior instances of OCPD discipline, the court of appeals applied an "abuse of discretion" standard of review.[12] Officer Nelson contends, however, that the court erred in doing so because the consistency issue is a question of due process, which we must review for correctness. We disagree and conclude that the court of appeals did not err in (1) applying an abuse of discretion standard of review, as required by statute, or (2) affirming the Board's conclusion that Officer Nelson's termination was not inconsistent with prior OCPD sanctions.

*A. The Court of Appeals' Review of the Board's Decision Is Limited by Section 10-3-1106 to an Abuse of Discretion Standard of Review*

¶25 Officer Nelson's merit employment is a creation of statute. Section 10-3-1105 of the Utah Code states that an "employee of a municipality shall hold employment without limitation of time, being subject to discharge . . . only as provided in Section 10-3-

---

[10] *Harmon v. Ogden City Civil Serv. Comm'n*, 2007 UT App 336, ¶ 6, 171 P.3d 474.

[11] *Kelly v. Salt Lake City Civil Serv. Comm'n*, 2000 UT App 235, ¶ 21, 8 P.3d 1048 (emphasis added).

[12] *Nelson v. Orem City*, 2012 UT App 147, ¶ 16, 278 P.3d 1089.

1106."[13] Section 10-3-1106 in turn provides a municipal employee with the right to "appeal the final decision to discharge . . . to an appeal board."[14] It leaves the "method and manner of choosing . . . the members of the appeal board," "the procedure for conducting an appeal," and the selection of "the standard of review" to "the governing body of each municipality by ordinance."[15]

¶26  Section 10-3-1106 also provides that a "final action or order of the appeal board . . . may be reviewed by the [c]ourt of [a]ppeals . . . for the purpose of determining if the appeal board . . . *abused its discretion or exceeded its authority*."[16] Pursuant to this clear directive in section 10-3-1106, the scope of the court of appeals' review of the Board's decision to terminate Officer Nelson was statutorily limited to an abuse of discretion standard of review. Therefore, we conclude that the court of appeals did not err when it applied an abuse of discretion standard of review to Officer Nelson's challenge on appeal.

¶27  On appeal to us, Officer Nelson's sole argument for a heightened standard of review is that the issue of whether OCPD consistently applied its excessive force policy is a question that implicates due process, and we review questions of due process for correctness. For this argument, Officer Nelson relies on our statement in *Chen v. Stewart* that "[c]onstitutional issues, including questions regarding due process, are questions of law that we review for correctness."[17] Officer Nelson has not made a due process claim, however, regarding OCPD's consistent application of its excessive force policy. Rather, he merely challenges the court of appeals' conclusion that his termination is not inconsistent with prior instances of OCPD discipline. While the court of appeals' conclusion as to the consistency issue may *implicate* due process concerns—such as fairness[18]—such concerns alone do not turn the

---

[13] UTAH CODE § 10-3-1105(1)(a).

[14] *Id.* § 10-3-1106(2)(a).

[15] *Id.* § 10-3-1106(7)(a).

[16] *Id.* § 10-3-1106(6)(a), (c)(ii) (emphasis added).

[17] 2004 UT 82, ¶ 25, 100 P.3d 1177.

[18] *In re Worthen*, 926 P.2d 853, 877 (Utah 1996) ("[T]he demands of due process rest on the concept of basic fairness." (internal quotation marks omitted)).

court of appeals' consistency analysis into a due process *claim* that we must in turn review for correctness.

¶28 Due process prevents the state from depriving a person of "life, liberty, or property" without due process of law.[19] A party can potentially make two types of claims under the due process clause: one is substantive, and the other is procedural.[20] A party makes a substantive due process claim by alleging, for example, a deprivation of a fundamental right.[21] Fundamental rights are protected against government action regardless of the fairness of the procedures used by the government.[22] Other rights are subject to government action so long as the government follows fair procedures, as required by procedural due process.[23] Thus, a party makes a procedural due process claim by alleging that the government failed to provide, for example, notice or a hearing.[24] But Officer Nelson's arguments regarding the consistency issue do not fall within either of the substantive or procedural components of due process and therefore would not require a correctness standard of review under our statement in *Chen*.

¶29 Rather, as discussed above, Officer Nelson merely criticizes the court of appeals' decision as to the consistency issue. But we clarify that the two-part test applied by the court of appeals, including the consistency component, should not be viewed as a stand-alone test for reviewing the validity of the Board's decision relating to employee discipline. While the test undoubtedly provides a useful framework for analyzing the Board's decision, it is not tied to any statutory language in section 10-3-1106,[25] which

---

[19] U.S. CONST. amend. XIV, § 1; UTAH CONST. art. 1, § 7.

[20] *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994).

[21] *Id.* at 1556.

[22] *Id.*

[23] *Id.*

[24] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

[25] The web of case citations in the court of appeals' case law applying the two-part test leads back to a decision by this court in *Vetterli v. Civil Serv. Comm'n*, 145 P.2d 792, 797 (Utah 1944). In that case, we analyzed the scope of the Salt Lake City Civil Service Commission's authority to review a department head's termination decision under an old civil service statute, section 15-9-21 of the Utah

(continued)

must govern the scope of the court of appeals' review. Section 10-3-1105 is clear that "[n]othing in this section or [s]ection 10-3-1106 may be construed to limit a municipality's ability to define cause for an employee termination."[26] Thus, the only question the court of appeals must address in reviewing the Board's decision is simply this: given OCPD's excessive force policy and its stated reasons for terminating Officer Nelson, did the Board "abuse[] its discretion or exceed[] its authority" in upholding the termination?[27]

¶30 We do not mean to suggest that the consistency with which a municipal employer applies its disciplinary policies is no longer a concern. We simply clarify that such concerns should be addressed within the applicable standards of review under section 10-3-1106. In this case, for example, the Orem City Code allows the Board to reverse a "Department Director's decision against the appealing employee [if] the Board finds that the decision was arbitrary and capricious or otherwise illegal."[28] A sanction that is wholly inconsistent with prior disciplinary practices or department policy would be arbitrary and capricious, and the court of appeals could reverse a Board decision made on such a basis for an abuse of discretion. But it is the employee's burden to demonstrate that the Board acted arbitrarily in sanctioning his conduct.[29] The court of

---

Code (1943). *Id.* at 794. The precise holding in that case was simply "that the power conferred on the commission to 'determine the matter' brought before it on appeal, is the power to determine the *sufficiency of the cause of removal*, and not simply to adjudge whether the cause alleged by the department head is true." *Id.* at 797. Section 10-3-1106 also gives the Board the authority to "fully hear and determine the matter." UTAH CODE § 10-3-1106(3)(b)(ii). But the Board, and in turn the court of appeals, can adequately determine the "sufficiency of the cause of removal" by applying the arbitrary and capricious standard within the parameters of section 10-3-1106 without the rigors of the two-part test applied by the court of appeals in this case.

[26] UTAH CODE § 10-3-1105(4).

[27] *Id.* § 10-3-1106(6)(c)(ii).

[28] OREM CITY, UTAH, MUN. CODE § 2-26-12, *available at* http://exe.orem.org/citycode/Chap_02.pdf.

[29] *Long v. W. States Refining Co.*, 384 P.2d 1015, 1016 (Utah 1963).

appeals need not apply a rigid two-part test in every case to scrutinize a city appeals board's decision.

*B. The Court of Appeals Did Not Err in Affirming the Board's Conclusion that Officer Nelson's Termination Was Not Inconsistent with OCPD Policy*

¶31  Given our conclusion above that the court of appeals did not err in reviewing the Board's decision for an abuse of discretion, there is no merit to Officer Nelson's argument that the court of appeals should have reversed the Board's conclusion that Officer Nelson's termination was not inconsistent with OCPD policy. As discussed above, the scope of the court of appeals' review under section 10-6-1106 is limited to determining whether the Board abused its discretion. That determination includes "decid[ing] whether the board correctly applied the standard governing its review of a termination decision, which is 'prescribed by the governing body of each municipality by ordinance.'"[30] In this case, Orem City has selected an "arbitrary and capricious" standard of review.

¶32  We accordingly must decide whether the Board abused its discretion in concluding that Officer Nelson's termination was not arbitrary and capricious.[31] We reverse under an abuse of discretion standard only if (1) "the [Board] relied on an erroneous conclusion of law" or (2) "there was no evidentiary basis for [its] ruling."[32] Further, to satisfy the arbitrary or capricious standard of review, the Board's decision "must fall within the limits of reasonableness or rationality."[33]

¶33  Officer Nelson's claim that his termination is inconsistent with OCPD's prior disciplinary practices under its excessive force policy must fail in light of his decision to forego challenging the

---

[30] *Becker v. Sunset City*, 2013 UT 51, ¶ 9, 309 P.3d 223 (quoting Utah Code Section 10-3-1106(7)(a)).

[31] *See id.* (stating that, on certiorari, "we assess whether the court of appeals correctly applied the appropriate standard of review").

[32] *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957 (internal quotation marks omitted).

[33] *Dep't of Admin. Servs. v. Pub. Serv. Comm'n*, 658 P.2d 601, 610 (Utah 1983).

Board's findings for clear error.[34] The Board found ample reason to distinguish Officer Nelson's use of force from the incidents involving Officer Healy. First, the Board found that Officer Nelson placed Mr. Fox in painful control holds whereas there was no evidence that Officer Healy inflicted any pain or injury. Second, the Board found that Officer Nelson "continued to escalate the use of force" while Officer Healy "recognized his mistake and took immediate steps to correct it by backing off and de-escalating the situation." Finally, the Board found that Officer Nelson used force to injure and punish Mr. Fox. In contrast, the Board found that Officer Healy "reacted out of anger" and that there was no evidence that he used force to inflict pain or punishment.

¶34 In light of these unchallenged findings, the Board's conclusion that Officer Nelson and Officer Healy were not similarly situated is a reasonable one. We therefore conclude that the court of appeals correctly determined that the Board did not abuse its discretion.

## II. THE COURT OF APPEALS DID NOT ERR IN ITS IMPARTIALITY RULINGS BECAUSE OFFICER NELSON HAS FAILED TO SHOW ANY DIRECT HARM THAT RESULTED FROM HIS ALLEGATIONS OF ERROR

¶35 Finally, Officer Nelson argues that the court of appeals erred in rejecting his claim that the Board violated his procedural due process rights by (1) entertaining OCPD's objection at his termination hearing while refusing to hear his objections and (2) relying on the testimony of OCPD's expert even though the expert had allegedly consulted with Officer Nelson. As to both issues, the court of appeals concluded that Officer Nelson failed to demonstrate prejudice.[35] We agree.

*A. The Board Did Not Sustain OCPD's Objection and, Regardless, Officer Nelson Failed to Demonstrate Prejudice*

¶36 Because Officer Nelson has a property right in his continued employment as a police officer, OCPD's termination of his employment must comport with principles of procedural due

---

[34] *Jex v. Labor Comm'n*, 2013 UT 40, ¶ 40, 306 P.3d 799.

[35] *Nelson v. Orem City*, 2012 UT App 147, ¶¶ 35–36, 278 P.3d 1089.

process.[36] These principles include the right to an impartial judge.[37] While principles of due process extend to administrative hearings,[38] it is well established that such "hearings need not have all the formality of judicial procedure."[39] The ultimate question when faced with an allegation of a biased decision maker is whether "the appearance of unfairness is so plain that we are left with the abiding impression that a reasonable person would find the hearing unfair."[40]

¶37 We conclude that Officer Nelson's allegation of partiality does not leave us with this abiding impression. He argues that the Board "informed [his] counsel that they . . . would not entertain any objections . . . while at the same time entertaining and sustaining multiple objections from OCPD." But the record indicates that OCPD made only one objection, and, rather than sustain it, the Board merely "noted" it. At no time did the Board prevent Officer Nelson or OCPD from continuing with their presentation of evidence. We therefore conclude that the court of appeals did not err in rejecting Officer Nelson's argument as to the partiality of the Board.

¶38 But even if Officer Nelson's allegation of partiality did indicate some unfairness at the hearing, he has failed to show prejudice. This is not the type of case in which we presume prejudice, such as when the decision maker has had previous, direct

---

[36] *Becker v. Sunset City*, 2013 UT 51, ¶ 14, 309 P.3d 223; *see also Goss v. Lopez*, 419 U.S. 565, 573 (1975) (stating that "a state employee who under state law, or rules promulgated by state officials, has a legitimate claim of entitlement to continued employment absent sufficient cause for discharge may demand the procedural protections of due process").

[37] *Anderson v. Indus. Comm'n*, 696 P.2d 1219, 1221 (Utah 1985).

[38] *Bunnell v. Indus. Comm'n*, 740 P.2d 1331, 1333 (Utah 1987).

[39] *State ex rel. Dep't of Cmty. Affairs v. Utah Merit Sys. Council*, 614 P.2d 1259, 1262 (Utah 1980).

[40] *Bunnell*, 740 P.2d at 1333 n.1; *see also V-1 Oil Co. v. Dep't of Envtl. Quality*, 939 P.2d 1192, 1197 (Utah 1997) ("Where a party to an adversarial proceeding can demonstrate actual impermissible bias or an unacceptable risk of an impermissible bias on the part of a decision maker, the decision maker must be disqualified.").

involvement in a case.[41] Officer Nelson must show a "reasonable likelihood that [the alleged error] affected the outcome of the case."[42] Even after the court of appeals based its holding in part on a lack of prejudice,[43] Officer Nelson has failed to argue to us that he suffered any direct harm. We accordingly affirm the court of appeals on this issue.

*B. The Board's Reliance on OCPD's Expert Was Harmless*

¶39  Officer Nelson next argues that the court of appeals erred in upholding the Board's decision to allow OCPD's expert, Mr. Ken Wallentine, to testify at the hearing given that Officer Nelson had allegedly consulted with, and revealed confidential information to, Mr. Wallentine. The court of appeals concluded that Mr. Wallentine's testimony was not prejudicial to Officer Nelson, even assuming it was improper for Mr. Wallentine to testify.[44] We agree.

¶40 First, it is unclear whether Officer Nelson and Mr. Wallentine even exchanged confidential information.  Officer Nelson merely alleges, in a conclusory fashion, that "the communication between [Officer Nelson] and Mr. Wallentine contained confidential and/or privileged information." But the declaration of Mr. Phillip Dyer, Officer Nelson's attorney, does not support this claim. Mr. Dyer provides an email chain that, while labeled "confidential," clearly shows that Mr. Wallentine declined to provide expert assistance to Officer Nelson and merely offered references and contact information for other potential experts that could assist Officer Nelson. Indeed, OCPD asserts that Mr. Wallentine has never met with Officer Nelson or his counsel, has never discussed the specifics of Officer Nelson's case, and has not received any confidential information.

¶41 Second, even assuming Officer Nelson did reveal confidential information to Mr. Wallentine, he has not shown a "reasonable likelihood that [Mr. Wallentine's testimony] affected

---

[41] *See Anderson*, 696 P.2d at 1221 (stating that "when a judge has previously been involved in a case as an attorney, there is no need to show actual prejudice").

[42] *Price v. Armour*, 949 P.2d 1251, 1255 (Utah 1997).

[43] *Nelson*, 2012 UT App 147, ¶ 35.

[44] *Id.* at ¶ 36.

the outcome of the case."[45] The Board referenced Mr. Wallentine's testimony only twice in its decision. The first reference related to the Board's conclusion that "the great weight of the evidence presented at the hearing indicates that [Officer] Nelson should have placed handcuffs on [Mr.] Fox once he had control of [Mr.] Fox on the ground." In support of this conclusion, the Board cited Mr. Wallentine's testimony that "handcuffs should have been applied to [Mr.] Fox as soon as [Mr.] Nelson had control of [Mr.] Fox on the ground." This reference to Mr. Wallentine's testimony is harmless, however, because the Board also relied on Captain Conner's testimony and the testimony of Officer Nelson's own expert, Mr. Curtis Cope, who each gave the same opinion as Mr. Wallentine.

¶42 The Board's second reference to Mr. Wallentine in fact *helped* Officer Nelson, as the Board cited Mr. Wallentine's testimony in support of its conclusion that there was insufficient evidence to support OCPD's charge of dishonesty. Because Officer Nelson has failed to show that Mr. Wallentine's testimony resulted in any direct harm, we affirm the court of appeals on this issue.

## CONCLUSION

¶43 We affirm the court of appeals' decision to uphold Officer Nelson's termination. First, the court of appeals' review of the Board's decision is limited by statute to a review for an abuse of discretion, and the particular question at issue in this case—the consistent application of OCPD's excessive force policy—does not require heightened review as a matter of due process. And, finally, the court of appeals was correct that any procedural due process violations were harmless.

---

[45] *Price*, 949 P.2d at 1255.