**2017 UT App 198**

## THE UTAH COURT OF APPEALS

CHRIS LAMONT,
Petitioner,

*v.*

RIVERTON CITY BOARD OF APPEALS,
Respondent.

Opinion
No. 20160445-CA
Filed October 26, 2017

Original Proceeding in this Court

Lincoln W. Hobbs and Sarah H. Orme, Attorneys
for Petitioner

Maralyn M. English and Christopher W. Droubay,
Attorneys for Respondent

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
GREGORY K. ORME and DAVID N. MORTENSEN concurred.

HARRIS, Judge:

¶1    Riverton City (the City) fired Chris LaMont from his position as a construction supervisor after he refused to submit to a "reasonable suspicion drug [and alcohol] test" while on duty. LaMont appealed his termination, and the Riverton City Board of Appeals (the Board) upheld the City's decision. LaMont now seeks judicial review of the Board's conclusion, claiming that (1) the City did not have reasonable suspicion to ask him to submit to an alcohol test in the first place; (2) the test he was asked to take, had he agreed to take it, would have been administered improperly; and (3) the Board upheld his termination "on an entirely different ground than that originally used" to fire him. We conclude that the City did have reasonable suspicion to test LaMont for alcohol; that LaMont's refusal was not based on any objections to the procedures of the particular

test he was asked to take; that the City gave LaMont sufficient notice that it was terminating his employment for, among other things, his insubordination in refusing the test; and that the Board properly relied on that insubordination as grounds to uphold LaMont's termination. Accordingly, we decline to disturb the Board's decision.

BACKGROUND

¶2      In September 2014, LaMont's supervisor (Supervisor) developed suspicions that LaMont may have been consuming alcohol while at work. On September 29, Supervisor and a Riverton City attorney (Attorney) exchanged text messages noting that LaMont would be at a conference the next day and speculating that he might drink alcohol during the conference. Accordingly, Attorney and Supervisor planned to have Supervisor observe LaMont at the conference and, if LaMont showed signs of intoxication, Supervisor and Attorney would later observe LaMont together to determine whether they had reasonable suspicion to ask LaMont to submit to an alcohol test.

¶3      The next day, Supervisor observed LaMont at the conference and noted that LaMont was "agitated," "his face was swollen and very red," "[h]is eyes were bloodshot," and he exuded the odor of alcohol. Supervisor immediately asked LaMont to meet with Supervisor and Attorney, then called Attorney outside of LaMont's presence and reported his belief that LaMont was intoxicated. Upon hearing this, Attorney began arranging for an alcohol test, and made plans to personally observe LaMont to determine whether he also believed LaMont was intoxicated. When LaMont met with Attorney and Supervisor shortly thereafter, Attorney noticed that LaMont's eyes were bloodshot, that he smelled like alcohol, and that his speech was slow or slurred.

¶4      Following a quick conference about their observations, Attorney and Supervisor jointly asked LaMont to take an alcohol test. LaMont refused. LaMont later claimed he did so because he "felt uneasy," felt the test was unauthorized, and believed the test may have been tampered with. LaMont did not give any other reasons for refusing the test, and he did not offer to take a different kind of test. At oral argument before this court, LaMont's counsel conceded that there is no evidence in the record indicating that LaMont, at the time he was asked to submit to the test, expressed any concerns about the testing procedure itself.

¶5      Under the Riverton City Personnel Policies and Procedures Manual (the City's Manual), "[a]n employee will be required to provide a urine sample" when "reasonable suspicion arises" that the employee has used alcohol. Refusal to do so upon request violates City policy and may also constitute "insubordination." The City's Manual defines "insubordination" as a "critical offense" that "may justify involuntary termination." Following LaMont's refusal to take the alcohol test, the City placed him on administrative leave.

¶6      On November 23, 2015, the City sent LaMont a pre-determination letter informing him that the City intended to conduct a hearing "considering discipline, up to and including termination." In the letter, the City explained that one of the grounds for potential discipline was his "insubordination" in refusing to submit to an alcohol test after Attorney and Supervisor formed a reasonable suspicion that he had been drinking. On December 2, the City held a hearing, and thereafter terminated LaMont's employment. In a "notice of determination" letter (Termination Letter) sent to LaMont on December 10, the City informed LaMont that he was being fired in part because the "City has determined that the appropriate

discipline for your insubordination of September 30, 2014, is to terminate your employment."[1]

¶7     LaMont appealed his termination to the Board. After a hearing, the Board issued a written decision upholding LaMont's termination. In the decision, the Board concluded that the City was justified in terminating LaMont's employment because his "refusal to comply" with Attorney and Supervisor's instructions to take a "reasonable suspicion [alcohol] test" constituted insubordination.

ISSUES AND STANDARDS OF REVIEW

¶8     LaMont seeks review of the Board's decision, contending that the Board upheld his termination "on an entirely different ground than [the City] originally used to justify termination," that the alcohol test would have been improper had it been administered, and that Supervisor and Attorney were not justified in asking him to take the alcohol test because they had not formed a reasonable suspicion that he was using alcohol.

¶9     We review the final action of an appeals board for abuse of discretion. *Nelson v. City of Orem*, 2013 UT 53, ¶ 24, 309 P.3d 237; *see also* Utah Code Ann. § 10-3-1106(6)(c)(ii) (LexisNexis 2015) ("The Court of Appeals' review shall be . . . for the purpose of determining if the appeal board or hearing officer abused its discretion or exceeded its authority."). In addition, "we review as a matter of law whether a specific set of facts gives rise to

---

1. In addition to insubordination, the City also indicated it was terminating LaMont for "refus[ing] to complete a DOT reasonable suspicion alcohol test" as well as for "violat[ions of] the City's Ethical Conduct Statement." However, we center our analysis on insubordination, and discuss the City's other reasons only as necessary to the analysis.

reasonable suspicion." *State v. Gurule*, 2013 UT 58, ¶ 20, 321 P.3d 1039 (citation and internal quotation marks omitted).

ANALYSIS

¶10 LaMont first contends that the Board upheld his termination "on an entirely different ground than [the City] originally used" to fire him, thus violating his due process right to adequate notice. "[M]unicipal employees . . . have a due process right to adequate notice of the reasons for their discharge so that they can meaningfully prepare for and participate in the municipal appeal board hearing." *Becker v. Sunset City*, 2013 UT 51, ¶ 15, 309 P.3d 223. Further, when determining whether to uphold a municipality's decision to discharge an employee, an appeals board may only consider "evidence related to the grounds . . . for which the employee has received proper notice." *Id.*

¶11 LaMont's argument is grounded in language found in the Termination Letter stating that he was being terminated for "refus[ing] to complete a [Department of Transportation] reasonable suspicion alcohol test." LaMont correctly notes that the Board concluded that the test LaMont was asked to take would not have satisfied Department of Transportation requirements, because LaMont had not been performing a "safety sensitive function" prior to being asked to take the test and because Supervisor and Attorney had not completed the requisite paperwork following their request for LaMont to take the test. Instead, the Board concluded that the test LaMont had refused to take could be considered a "reasonable suspicion [drug or alcohol] test" authorized by City policy. The Board then determined that LaMont's termination could be upheld on the basis that he refused to take a City reasonable-suspicion alcohol test, even though the pre-determination letter had referred to the test as a "[Department of Transportation] reasonable suspicion"

test. The different nomenclature, LaMont argues, reflects "a new reason for discharge that LaMont had never received notice of."

¶12 However, LaMont's argument overlooks several important facts, including that the pre-determination letter informed him that a potential ground for his termination could be "insubordination," that the Termination Letter stated that his "insubordination" in refusing to submit to the test formed an independent ground for the decision, and that "insubordination" is indeed a terminable offense per City policies. Further, LaMont does not dispute that the Board determined that his "insubordination" in refusing the alcohol test constituted valid grounds for the City to terminate him. Because LaMont received notice of a valid reason for his termination—insubordination for refusing to submit to an alcohol test—and the Board upheld his termination specifically with reference to that reason, there are no material infirmities in the notice that the City provided to LaMont. The fact that the Board also considered other potential grounds for termination is irrelevant. *See Nelson*, 2013 UT 53, ¶ 43 (declining to disturb a board of appeals decision to uphold the termination of a police officer on the asserted grounds of excessive force even though the board reversed a separate asserted ground entirely); *see also Hugoe v. Woods Cross City*, 2013 UT App 278, ¶ 10, 316 P.3d 979 (determining that no due process violation occurred, even where the board heard evidence concerning an incident not included in the pre-termination notice, as long as the board "did not rely on" the non-noticed incident and had an independent, properly-noticed ground upon which to uphold termination). For this reason, we hold that LaMont's due process rights were not violated when the Board upheld his termination on the ground of "insubordination" for refusal to submit to an alcohol test—a ground that was identified in his pre-determination letter as well as in the Termination Letter.

¶13 Similarly, it does not matter that the test LaMont was asked to take would not have met Department of Transportation

requirements, or that it may have been administered improperly had it been given. LaMont correctly points out that Supervisor and Attorney both referred to the test as a "[Department of Transportation] reasonable suspicion test," even though the test that Supervisor and Attorney would have had him take did not meet Department of Transportation standards. LaMont also argues that the test would have been improperly administered, and that had he agreed to the test its results would not have been compliant with City or Department of Transportation policies. But these arguments, while accurate, are ultimately irrelevant. Even if we assume that the test LaMont refused to take did not meet Department of Transportation requirements and would have been improperly administered, and that therefore any evidence that may have been derived from it would ultimately have been untrustworthy, LaMont rendered any such considerations moot by insubordinately refusing to take the test in the first place. As noted, there is no evidence that LaMont's refusal had anything to do with procedural concerns. Under these circumstances, LaMont's refusal to take a reasonable-suspicion alcohol test represented sufficient grounds for LaMont's termination, completely independent of any unexpressed concerns about the testing procedures.

¶14 Finally, LaMont contends that Supervisor and Attorney did not ever form a *reasonable* suspicion that LaMont was under the influence of alcohol. LaMont correctly notes that under the terms of the City's Manual, an employee may be asked to submit to an alcohol test only if his supervisor and an acting risk manager[2] form a "reasonable suspicion" that he has consumed

---

2. LaMont also argues that the test was not in compliance with the City's policies because Supervisor and Attorney—rather than a "risk manager"—observed him. However, the record clearly indicates that Attorney had two official job titles, that of "city attorney" and that of "legal risk manager." Accordingly,

(continued…)

alcohol. The Manual does not define the term "reasonable suspicion," and the parties have not argued for any specific definition of that term. However, the term "reasonable suspicion" is commonly used in criminal procedure, and has been interpreted by extensive state and federal precedent. "'We review administrative rules in the same manner as statutes, focusing first on the plain language of the rule'" and seeking "'to give effect to the intent of the body that promulgated the rule.'" *Phillips v. Department of Commerce*, 2017 UT App 84, ¶ 7, 397 P.3d 863 (quoting *Utah Chapter of Sierra Club v. Air Quality Board*, 2009 UT 76, ¶ 13, 226 P.3d 719). In this case, given that City policy uses the term "reasonable suspicion" in relation to violations of policy, we think it best to apply the same definition of "reasonable suspicion" in the context of the City's policies as is commonly applied in the context of criminal law.

¶15    In the criminal context, "reasonable suspicion" exists when an observer is "'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion'" upon the suspected individual. *State v. Anderson*, 2013 UT App 272, ¶ 12, 316 P.3d 949 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968) (bracket in original)). A court considers the "totality of the circumstances to determine whether, taken together, the facts" known to the observer "warranted further investigation." *Id.* ¶ 13 (quoting *State v. Alvarez*, 2006 UT 61, ¶ 14, 147 P.3d 425) (internal quotation marks omitted).

¶16    Applying that definition here, we conclude that, under all of the circumstances presented, the City had a reasonable suspicion that LaMont had consumed alcohol. As noted,

---

(…continued)
Supervisor and Attorney's joint concurrence that there existed reasonable suspicion that LaMont had consumed alcohol satisfied the City's policy.

Supervisor and Attorney both observed that LaMont smelled like alcohol, that his eyes were bloodshot and his face puffy, that his speech was slow, and that he appeared agitated. These circumstances, taken together, have been held to constitute reasonable articulable suspicion in the criminal context. *See, e.g., State v. Perkins*, 2009 UT App 390, ¶ 14, 222 P.3d 1198 (concluding that officers had reasonable suspicion where the defendant exhibited "red eyes and slurred speech, was slow to respond . . . and stumbled upon leaving the vehicle"); *see also State v. Morris*, 2011 UT 40, ¶ 27, 259 P.3d 116 (holding that "the smell of alcohol emanating from [the defendant's vehicle] was enough to generate" reasonable suspicion). We draw a similar conclusion here.

¶17   Accordingly, Supervisor and Attorney's request that LaMont submit to an alcohol test was based on reasonable suspicion and constituted a legitimate order. LaMont's refusal to submit to that test was therefore insubordinate.

## CONCLUSION

¶18   LaMont refused to take an alcohol test that was based on reasonable suspicion, received notice that his refusal constituted insubordination and was a potential ground for termination, and then was terminated for insubordination. The Board did not abuse its discretion when it upheld LaMont's termination on those grounds. Accordingly, we do not disturb the Board's decision.

————————