**2019 UT App 170**

## The Utah Court of Appeals

STEPHEN ABRAHAM ASHTON AND
ONE FOR THE MONEY FINANCIAL INC.,
Petitioners,
*v.*
DEPARTMENT OF COMMERCE AND SECURITIES COMMISSION,
Respondents.

Opinion
No. 20180510-CA
Filed October 18, 2019

Original Proceeding in this Court

Stephen K. Christiansen, Attorney for Petitioners

Sean D. Reyes and Erin T. Middleton, Attorneys for
Respondents

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES KATE APPLEBY and DIANA HAGEN concurred.

MORTENSEN, Judge:

¶1      Stephen Abraham Ashton—an individual unlicensed to
act as an investment adviser in the state of Utah—acted as an
investment adviser in the state of Utah. Consequently, Ashton
was investigated by the Division of Securities (Division) and
fined $250,000 by the Utah Securities Commission
(Commission). A portion of Ashton's fine was also attributable
to Ashton's interference with the Division's investigation.
Ashton filed a request for agency review and the executive
director of the Department of Commerce (Department) affirmed
the Commission's fine. Ashton seeks judicial review and asks us
to conclude that because he was paid by financial institutions
rather than his clients—to whom he gave "free" advice—he was
not required to obtain a securities license. We decline to disturb
the Department's conclusion related to licensure. However,

because the Department erroneously concluded that Ashton's interference with the Division's investigation violated section 61-1-19 of the Utah Uniform Securities Act (Act) we vacate the entire fine and return the case to the agency to recalculate the fine amount consistent with this opinion.

BACKGROUND[1]

¶2      Ashton is an insurance agent who owned and operated One for the Money Financial Inc. in St. George, Utah. Despite not being licensed as an investment adviser, the articles of incorporation for Ashton's company declared that its purpose was to "provide financial planning services." One for the Money's website also advertised that it offered "information, education, advice and planning services," and it included a testimonial from a client who was "pleased with the advice and efficient handling of our 401k money."

¶3      Ashton also advertised on a variety of mediums holding himself out as "knowledgeable and able to provide a broad range of investment and financial services," including reviewing investment portfolios, 401(k), and retirement accounts. For example, Ashton advertised on his LinkedIn profile that he was "[r]ecognized as one of the top retirement experts in the nation," had helped "thousands of individuals" prepare for a "secure retirement," and had a background in "traditional financial planning."

¶4      Ashton also co-hosted a weekly radio program titled "Retirement Brothers" with his brother, who also worked for

---

1. Ashton did not challenge the factual findings made by the Commission and adopted by the Department on agency review. We accordingly recite the facts consistent with the Department's findings as set forth in its decision. *Nelson v. City of Orem*, 2013 UT 53, ¶ 3 n.1, 309 P.3d 237.

One for the Money.[2] There, Ashton advertised that he could review listeners' IRA, 401(k), and other retirement accounts that were invested in securities.

¶5 Ashton gave "free" seminars and consultations in which he discussed liquidating various securities products, including stocks, bonds, and mutual funds, in order to purchase variable annuities—an insurance product. Ashton went on to compare securities to a roller coaster, a casino, or a poker game, but he described purchasing annuities as a "safe" retirement strategy. He also offered to conduct "free" consultations to review clients' portfolios. At least one of Ashton's presentation slides stated, "Tax-Free IRA or 401k Rollovers—It is very common for individuals to rollover their IRAs and 401ks into a safe, Fixed Indexed Annuity."

¶6 In other words, Ashton's "free" seminar had a grander purpose: offer negative advice on securities in order to sell annuities—which are not considered a security, *see* Utah Code Ann. § 61-1-13(1)(ee)(ii)(A) (LexisNexis 2018)[3]—for a commission. After giving the "free" seminars to prospective clients, Ashton offered a "free" consultation where he urged his actual clients to sell or rollover their securities to purchase annuities. Indeed, Ashton advertised that at any time he had "over $3.5 million in personal annuity premium production pending" and that the "[s]eminars generate[d] close to 50% of [his] total revenue every year."

¶7 Ashton also kept a digital file that tracked his clients. The notes in that file contained multiple references to discussions

---

2. The Division also investigated Ashton's brother, and he stipulated to pay a fine.

3. Because the statutory provision in effect at the relevant time does not differ in any material way from the provision now in effect, we cite the current version of the Utah Code.

with actual clients about IRA rollovers and Roth IRA conversions to facilitate the purchase of annuities. The notes further revealed that clients did indeed liquidate their securities accounts to purchase annuities. Ashton admitted that this happened many times.

¶8     In 2014, the Division opened an investigation into Ashton. Early on, the Division noticed that certain information was missing from files that Ashton had turned over. The Division issued a subpoena requesting the missing documents, but Ashton declined to produce them. After the Division filed an order to show cause requesting that a court compel Ashton to produce the missing documents, he agreed to give the Division "full access" to his client files, emails, and other information. But Ashton still did not disclose all of his documents. Although the Division obtained some of the missing documents from third parties, Ashton continued to refuse to turn over his complete files.

¶9     The Division issued a notice of agency action and order to show cause, alleging that Ashton was holding himself out as an investment adviser without a license in violation of the Act, *see id.* § 61-1-3, and the Department of Commerce Administrative Rules, *see* Utah Admin. Code R164-4-2(G)(3).

¶10    After a hearing, the Commission entered an order stating that "[Ashton is] ordered to cease and desist from committing or causing any violations, or future violations of Section 61-1-3(4)(a)(i) of the Utah Securities Act and the Rules promulgated thereunder, including but not limited to, Utah Admin Code Rule 164-4-2(G)(3)." The Commission further determined that Ashton violated section 61-1-19 of the Act in connection with his interference with the Division's investigation. The Commission fined him $250,000 for these violations. Ashton requested an agency review with the Department, and after its review, the Department affirmed the Commission's order.

¶11   Ashton petitions for judicial review of the Department's order.

ISSUES AND STANDARDS OF REVIEW

¶12   Ashton raises two issues for our review. The first is whether the Department erred in fining Ashton for holding himself out as an investment adviser without a license. The second is whether the Department erred in ruling that Ashton violated section 61-1-19 of the Act by interfering with the Division's investigation. These issues raise questions of statutory interpretation, which we review for correctness. *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 12, 267 P.3d 863.

ANALYSIS

I. Licensure

¶13   We decline to reach Ashton's first issue—whether he violated the Act—because he failed to challenge the Department's conclusion that he also violated rule R164-4-2(G)(3)(c) of the Utah Administrative Code. Accordingly, we decline to disturb the Commission's conclusion—as it relates to licensure—on that ground. *See Simmons Media Group, LLC v. Waykar, LLC*, 2014 UT App 145, ¶ 32, 335 P.3d 885 ("This court will not reverse a ruling . . . that rests on independent alternative grounds where the [petitioner] challenges only one of those grounds." (cleaned up)).

¶14   The Commission was authorized to fine Ashton for violating rule R164-4-2. The Act authorizes the Division to "make, amend, or rescind a rule . . . when necessary to carry out this chapter." Utah Code Ann. § 61-1-24(1)(a) (LexisNexis 2018). Further, the Act authorizes the Department to impose fines, *id.* § 61-1-20(1)(e)(ii), and/or "a combination of sanctions," *id.* § 61-1-20(1)(e)(vii), "[w]henever it appears to the [Department] that a

person has engaged, is engaging, or is about to engage in an act or practice constituting a violation of this chapter or a *rule* or order under this chapter," *id.* § 61-1-20(1) (emphasis added). Here, the Commission fined Ashton for violating the Act and a related rule.

¶15    Rule R164-4-2(G)(3)(c) of the Utah Administrative Code provides, "An insurance agent who, receives a commission from the sale of insurance to a client who makes such purchase with the proceeds of securities the insurance agent recommended be sold, must be licensed as an investment adviser or investment adviser representative." Here, the Commission expressly premised Ashton's fine on violations of the Act *and* the administrative rule. And the Department affirmed the Commission on those same grounds. While Ashton argues that he did not violate the Act, he is silent as to his violation of the rule. Indeed, Ashton's brief did not even cite rule R164-4-2(G)(3)(c). Accordingly, where Ashton has not challenged the Department's conclusion that he violated rule R164-4-2(G)(3)(c), and where that violation serves as a sufficient, independent ground for fines or sanctions as related to licensure, we decline to disturb the Department's conclusion on this issue.

## II. Investigation Interference

¶16    Next, Ashton argues it was error to determine that he violated section 61-1-19 of the Act. Because section 61-1-19 grants only investigatory authority to the Division, and does not apply to third parties—such as Ashton—the Commission cannot levy fines on a third party for violating this section.

¶17    Section 61-1-19 of the Act, under the heading "Investigations authorized," provides,

> (1)(a) The division may make any public or private investigations within or without this state as the division considers necessary to determine whether a person has violated, is violating, or is about to

violate this chapter or a rule or order issued under this chapter.

    (b) To aid in the enforcement of this chapter or in the prescribing of rules and forms issued under this chapter, the division may require or permit a person to file a statement in writing, under oath or otherwise as to all the facts and circumstances concerning the matter to be investigated.

    (c) The division may publish information concerning a violation of this chapter or the violation of a rule or order issued under this chapter.

(2) For the purpose of an investigation or proceeding under this chapter, the division, the commission, or an employee designated by the division may:

    (a) administer an oath or affirmation;

    (b) subpoena a witness and compel the attendance of the witness;

    (c) take evidence; and

    (d) require the production of any books, papers, correspondence, memoranda, agreements, or other documents or records relevant or material to the investigation.

Utah Code Ann. § 61-1-19 (LexisNexis 2018). Section 61-1-19 provides no mechanism to fine or sanction an investigated party for noncompliance with an ongoing investigation.[4] The language used in this section is not directed at private actors such as Ashton, rather it is aimed at the Division itself. Indeed, "the

---

4. We note that other remedies such as contempt power, *see, e.g.,* Utah Code Ann. § 78B-6-313 (LexisNexis 2018), or other sections of the Act may provide that authority.

division" is the subject of every sentence in section 61-1-19, which merely articulates what actions the Division may take in conducting investigations.

¶18    Accordingly, where section 61-1-19 of the Act provides no statutory authority to issue fines or sanctions, the Commission erred in concluding otherwise. And neither the Commission nor the Department separately delineated what portion of Ashton's fine was attributable to investigative interference. Consequently, we vacate the entire fine and return the matter to the agency to revisit the amount of the fine independent of any perceived violation of section 61-1-19.

CONCLUSION

¶19    Because Ashton did not challenge the Department's conclusion that he violated administrative rule R164-4-2—which serves as an independent ground for Ashton's fine—we decline to disturb the Department's conclusion on licensure. However, because section 61-1-19 of the Act does not authorize the imposition of fines or sanctions, and because the Department did not specify which portion of Ashton's fine related to section 61-1-19, we vacate the entire fine and return the matter to the agency to further consider the fine amount independent of any perceived violation of that section.

_____