2020 UT App 37

# THE UTAH COURT OF APPEALS

JESSICA HO,
Petitioner,

*v.*

DEPARTMENT OF COMMERCE, DIVISION OF
OCCUPATIONAL AND PROFESSIONAL LICENSING,
Respondent.

Opinion
No. 20190087-CA
Filed March 12, 2020

Original Proceeding in this Court

W. Andrew McCullough, Attorney for Petitioner

Sean D. Reyes, Stanford E. Purser, and Laurie L.
Noda, Attorneys for Respondent

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
FORSTER concurred.

MORTENSEN, Judge:

¶1 Although Jessica Ho previously had a license to engage in massage therapy, she had no such license the day an investigator (Investigator) from the Division of Occupational and Professional Licensing (DOPL) entered the establishment where Ho worked. As found by DOPL, Ho confirmed that Investigator wanted a massage, stated prices based on the differing massage durations, indicated that she personally would be conducting the massage, and commenced massaging Investigator's arm. Ho was cited for these acts. Ho challenged the citation, but she did not prevail. She then sought agency review from the Department of Commerce (Department), which upheld her citation and fine. Ho now seeks judicial review, arguing that her constitutional

rights to freedom of speech and due process were violated. We decline to disturb the Department's order.

BACKGROUND[1]

*The Investigation and Citation*

¶2    After receiving reports from the Salt Lake County Health Department that individuals at a massage establishment were likely providing massages without a license, Investigator went to inspect the business. When he walked into the massage business, Investigator was greeted by Ho. She asked Investigator, "Are you here for a massage?" Investigator said, "Yes." Ho then directed him to another room and followed him there.

¶3    Once the two were inside the massage treatment room, Ho closed the door, dimmed the lights, and said she would give Investigator a thirty-minute massage for $50 or an hour-long massage for $90. Investigator then asked Ho, "Are you going to be giving me the massage?" Ho confirmed that she would be. As they talked, Ho took Investigator's right arm and started to rub it up and down with her thumb and fingers on both hands. As Ho continued to rub Investigator's arm, Investigator inquired, "Do you have a license?" Looking startled, Ho immediately stopped rubbing Investigator's arm, stepped back, and exclaimed, "Who are you?" Investigator disclosed that he worked for DOPL and asked to see Ho's massage license. Ho immediately responded, "I did not offer you a massage."

¶4    Investigator then asked Ho for her driver license, which she gave him. Investigator called other DOPL personnel at the

---

1. "We state the facts and all legitimate inferences drawn therefrom in the light most favorable to the agency's findings." *ABCO Enters. v. Utah State Tax Comm'n*, 2009 UT 36, ¶ 2 n.1, 211 P.3d 382 (cleaned up).

DOPL office to determine whether Ho was a licensed massage therapist. Ho did not have a current massage license; it had been previously revoked.

¶5     Several weeks later, DOPL mailed Ho a citation for "practicing or engaging in, representing oneself to be practicing or engaging in or attempting to practice" massage therapy without a license under Utah Code section 58-1-501(1)(a).[2] Ho denied any wrongdoing and requested a hearing to challenge the citation.

*The Administrative Adjudication*

¶6     A formal hearing was held before the Utah Board of Massage Therapy (Board) and an administrative law judge (ALJ). During opening statements, DOPL's attorney explained that the owner of the massage business acknowledged that he was aware that Ho had been charged with prostitution, and that her license had been revoked through a prior hearing due to that charge. Ho objected. The Board was then excused from the hearing room. Outside the presence of the Board, Ho explained that the prostitution charge had been expunged,[3] and she requested an outright dismissal of the citation. Counsel for DOPL responded that she was unaware of the expungement, and that the prostitution charge was relevant, as it was the reason for the revocation of Ho's license. The ALJ ruled that the hearing would proceed, but that no further reference to prostitution should occur. Ho stipulated that her license had

---

2. In all instances that we refer to the Utah Code, we are referring to the 2016 version, which was in effect at the relevant times.

3. We generally endeavor not to refer to an individual's expunged criminal record. But because Ho raises the expunged charge as an issue and because it is at the heart of her due process argument, we address it to the extent necessary.

been revoked. The ALJ then invited the Board to re-enter the hearing room and admonished the Board not to consider the prostitution charge:

> I'm asking you to completely disregard anything about the subject of prostitution. There is no evidence before you about that subject, none whatsoever. . . . [The parties] have agreed that [Ho] was once licensed as a massage therapist, and that she is no longer licensed. . . . [E]very one of the members of the [B]oard here was on the [B]oard when that hearing took place. We're not going to rely upon the reasons why or whatever.

¶7    The parties proceeded to present their cases. Having considered the evidence, the Board found in relevant part that "[a]n offer and advertisement of massage therapy services was made by" Ho, "who orally confirmed with [Investigator] that she was the individual who was going to provide the massage." The Board also found that Ho "previously had a license to provide massage therapy, but such license had been revoked by action of the Board in a prior administrative proceeding." Based on its findings of fact, the Board concluded that Ho committed an unlawful act in two ways: (1) she provided, offered, or advertised to Investigator a paid service using the term massage under Utah Code section 58-47b-102(6)(*l*), and (2) she "practiced massage therapy by the systematic manual manipulation of the soft tissue of the body (in this case, the arm of [Investigator]), as provided" in section 58-47b-102(6)(b)(vii). The Board finally concluded that Ho violated section 58-1-501(1)(a)(i)–(ii), which prohibits engaging in those actions without a license.

¶8    The Board ultimately recommended that the director of DOPL assess Ho a fine of $1,500. Several days later, the director reviewed and adopted the Board's recommend findings and conclusions in their entirety and imposed the fine.

¶9     The next month, Ho requested an agency review of the director's order from the Department. In her request, Ho made several legal arguments; however, she did not challenge any of the Board's factual findings. The Department adopted and recited the factual findings verbatim.

¶10     The Department then addressed Ho's legal arguments, rejected them all, and upheld the fine. First, the Department concluded that two of Ho's procedural arguments were unpreserved: (1) that the ALJ unlawfully delegated his assigned functions to the Board, which should not have made conclusions of fact and law, and (2) that the Board had a prejudicial conflict of interest as "an institutionalized agent of [DOPL]." Then, the Department rejected Ho's argument that the reference to her previous prostitution charge required dismissal, concluding that Ho failed to show prejudice. Finally, the Department agreed with the Board's conclusions that Ho's actions provided two independent grounds proving that she engaged in unlawful conduct: she "took . . . Investigator to a massage room, offered to personally provide him a massage, and told him the rates for different sessions," and she "provided systematic manual manipulation of soft tissue, here . . . Investigator's arm."

¶11     Ho seeks judicial review.


ISSUES AND STANDARDS OF REVIEW

¶12     There are two issues for us to address. First, we review whether Utah Code section 58-47b-102(6)(*l*) facially violates Ho's right to freedom of speech under the First Amendment to the United States Constitution.[4] "The interpretation and

---

4. Ho challenges the Department's conclusion that her actions met the definition of engaging in the practice of massage therapy for a fee under Utah Code section 58-47b-102(6)(b)(vii)—"the systematic manual or mechanical manipulation of the soft tissue

(continued…)

constitutionality of a statute are questions of law that we review for correctness." *Waite v. Utah Labor Comm'n*, 2017 UT 86, ¶ 5, 416 P.3d 635.

¶13 Second, we address whether the Board violated Ho's right to due process—specifically, a fair hearing. As we explain, Ho failed to preserve two of her arguments on this issue. However, because she preserved her final argument—that the reference to her previous prostitution charge unfairly prejudiced the Board against her—we review it. "Constitutional issues, including questions regarding due process, are questions of law that we review for correctness." *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 47, 299 P.3d 990 (cleaned up). "The ultimate question when faced with an allegation of a biased decision maker is whether the appearance of unfairness is so plain that we are left with the abiding impression that a reasonable person would find the hearing unfair." *Nelson v. City of Orem*, 2013 UT 53, ¶ 36, 309 P.3d 237 (cleaned up).

ANALYSIS

## I. Freedom of Speech

¶14 Ho does not challenge the Department's conclusion that her actions met the definition of unlawfully practicing massage by "providing, offering, or advertising a paid service using the term massage" without a license under Utah Code section 58-47b-102(6)(*l*). Her challenge instead rests on her contention that

---

(…continued)

of the body for" one of the included purposes. However, we need not and do not address her contention regarding this statutory provision because we conclude that section 58-47b-102(6)(*l*)—"providing, offering, or advertising a paid service using the term massage"—is constitutional and provides an independent ground to support Ho's fine.

section 58-47b-102(6)(*l*) facially violates her right to freedom of speech under the First Amendment to the United States Constitution. "When addressing a challenge to the constitutionality of a statute, we presume the statute to be constitutional, resolving any reasonable doubts in favor of constitutionality." *South Salt Lake City v. Maese*, 2019 UT 58, ¶ 8, 450 P.3d 1092 (cleaned up); *see also Vega v. Jordan Valley Med. Center, LP*, 2019 UT 35, ¶ 12, 449 P.3d 31 ("We presume that legislative enactments are constitutional and where possible will construe them as complying with our state and federal constitutions."). "Moreover, in a facial challenge to a statute, . . . we will only overturn the will of the legislature when the statute is so constitutionally flawed that no set of circumstances exists under which the statute would be valid." *Vega*, 2019 UT 35, ¶ 12 (cleaned up). Because we conclude that section 58-47b-102(6)(*l*) is constitutional as applied to Ho, her facial challenge fails. *Id.*; *State v. Lafferty*, 2001 UT 19, ¶ 78, 20 P.3d 342 (explaining that the statute was valid as applied to the defendant, and therefore "his facial challenge must fail a fortiori").

¶15 Not all speech is treated equally in the eyes of the law. Some speech, such as that regarding "'politics, nationalism, religion, or other matters of opinion,'" is often held in high repute and receives significant protection. *Janus v. American Fed'n of State, County, & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018) (quoting *West Va. Board of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)). Some forms of speech, such as commercial speech, receive an intermediate level of protection. *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). Other categories of speech receive minimal protection. *See, e.g., Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988) (applying the rational basis test to educators' editorial control over "school-sponsored expressive activities"). And finally some forms of speech receive no protection whatsoever. *E.g., Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) (defamation); *Brandenburg v. Ohio*, 395 U.S. 444, 447–48 (1969) (incitement); *Schenck v. United States*, 249 U.S. 47, 52 (1919) (explaining that the "most stringent protection of free speech

would not protect a man in falsely shouting fire in a theatre and causing a panic"). Thus, one of the crucial first steps in assessing a restriction on speech is determining the category in which the type of speech fits.

¶16 The speech at issue in this case is commercial speech. There is a "commonsense distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech." *Central Hudson*, 447 U.S. at 562 (cleaned up). Speech is commercial when it "propose[s] a commercial transaction" or relates solely to the parties' economic interests. *Board of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 473–74 (1989) (cleaned up); *see also Central Hudson*, 447 U.S. at 561 (explaining that commercial speech is "expression related solely to economic interests of the speaker and its audience"). Ho clearly proposed a commercial transaction when she recited the varying prices of the massages and confirmed that she would be providing the massage to Investigator, especially considering that this all occurred in a commercial massage establishment. Moreover, with our emphasis, section 58-47b-102(6)(*l*) restricts "providing, offering, or advertising a *paid service* using the term massage."

¶17 Having determined that the speech at issue is commercial, the four-part test developed in *Central Hudson* applies to determine whether the restriction on commercial speech violates the First Amendment. 447 U.S. at 566. Those parts consist of (1) whether the expression concerns lawful activity and is not misleading, (2) "whether the asserted governmental interest is substantial," (3) "whether the regulation directly advances the governmental interest asserted," and (4) whether the regulation is more extensive than necessary. *Id.*

¶18 Here, Ho's claim that section 58-47b-102(6)(*l*) is unconstitutional fails at the initial step of this analysis because her speech was misleading. When Ho explicitly stated that she would provide the massage to Investigator for one of the two prices, she inaccurately implied that she was licensed and could

lawfully do so. This is precisely what the statute was designed to prevent—scenarios in which Utah consumers are misled into believing that unlicensed individuals are qualified to practice massage therapy. Thus, we have no trouble rejecting Ho's claim that her constitutional right to freedom of speech was violated. *Id.* at 563 ("The government may ban forms of communication more likely to deceive the public than to inform it . . . ."); *see also In re R.M.J.*, 455 U.S. 191, 203 (1982) ("Misleading advertising may be prohibited entirely."); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976) ("Untruthful speech, commercial or otherwise, has never been protected for its own sake."); *Accountant's Society of Va. v. Bowman*, 860 F.2d 602, 606 (4th Cir. 1988) ("The ban on the use of 'public accountant' or 'PA' by unlicensed accountants, in [the statute], is a constitutionally permissible regulation of misleading commercial speech . . . .").

¶19 Nevertheless, Ho argues that the statute unconstitutionally prohibits the mere use of the word massage in any context. But this greatly misconstrues the statute by overlooking the "paid service" part of the statutory definition. Hence, no mere mention of the word massage is proscribed. Instead, only "*providing, offering, or advertising a paid service using the term massage*" is prohibited, as the statute says. Utah Code Ann. § 58-47b-102(6)(*l*) (LexisNexis 2016) (emphasis added). What's more, section 58-47b-304(1)(*l*) exempts "an individual performing gratuitous massage" from the licensure requirement. So, not even offering a free massage without a license—let alone mentioning the word massage—is prohibited. In short, Ho's argument is unpersuasive because it mischaracterizes the scope of the statute. We find no constitutional infirmity therein.[5]

---

5. Beyond this misreading of the statute, Ho passingly argues that the provision in its correct construction is overbroad. However, "the overbreadth doctrine does not apply to commercial speech." *Village of Hoffman Estates v. Flipside, Hoffman*

(continued…)

¶20 Accordingly, we conclude that section 58-47b-102(6)(*l*) does not violate Ho's right to freedom of speech, and we decline to disturb the Department's order on this basis.

## II. Due Process

¶21 Ho advances three arguments related to a lack of procedural fairness at her hearing. She first asserts that she was denied her right to due process when the Board decided questions of both fact and law. She then posits that she did not receive a neutral fact-finder because the Board "is an institutionalized agent" of DOPL and the "conflict of interest is obvious" and "inherently unfair." Ho finally argues that she was unfairly prejudiced by the reference DOPL's attorney made in her opening statement that Ho had been charged with prostitution. Below, we initially explain why Ho's first and second arguments are unpreserved. Then, we explain why Ho was not prejudiced by the reference to her prostitution charge.

### A. Preservation

¶22 "[T]he preservation rule applies to appeals from administrative agencies" in two different situations: "when mandated by statute" or "when not mandated by statute, . . . [but] the issue raised on appeal could have been resolved in the administrative setting." *ABCO Enters. v. Utah State Tax Comm'n*, 2009 UT 36, ¶¶ 10–11, 211 P.3d 382; *see also Badger v. Brooklyn Canal Co.*, 966 P.2d 844, 847 (Utah 1998) ("[A] party seeking review of agency action must raise an issue before that agency to preserve the issue for further review."); *Kunej v. Labor Comm'n*,

---

(…continued)
*Estates, Inc.*, 455 U.S. 489, 497 (1982); *accord Board of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 481 (1989); *National Council for Improved Health v. Shalala*, 122 F.3d 878, 882 n.6 (10th Cir. 1997). Therefore, Ho's argument is legally misplaced.

2013 UT App 172, ¶ 23, 306 P.3d 855 ("We have consistently held that issues not raised in proceedings before administrative agencies are not subject to judicial review except in exceptional circumstances." (cleaned up)). Requiring parties to preserve issues promotes efficiency and fairness to both the adjudicative tribunal and the parties. *See Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 20, 163 P.3d 615.

¶23    Here, the parties do not point us to any applicable statutory command to preserve issues; nevertheless, Ho's arguments fall under the second administrative preservation category—i.e., the issues could have been resolved below. *See Nielsen v. Labor Comm'n*, 2020 UT App 2, ¶ 9 n.1. At the time of the hearing, both the Division of Occupational and Professional Licensing Act and the Administrative Procedures Act allowed the Board, the ALJ, and the director of DOPL to preside over the hearing in the manner in which they did in this case.[6] Utah Code Ann. § 58-1-109(1)–(4) (establishing the presiding officers and their duties in occupational and professional licensing administrative proceedings); *id.* § 58-1-202(1)(f) (dictating that the duties of boards include "acting as presiding officer in conducting hearings associated with adjudicative proceedings and in issuing recommended orders when so designated by the director"); *id.* § 63G-4-103(1)(h)(i) ("'Presiding officer' means an agency head, or an individual or body of individuals designated by the agency head, by the agency's rules, or by statute to conduct an adjudicative proceeding.").

¶24    Moreover, those Acts provided the means for a different presiding officer to be appointed, such as the ALJ. *Id.* § 58-1-109(1)–(3) (establishing the regular presiding officer "[u]nless otherwise specified by statute or rule . . . [or] the director"); *id.* § 63G-4-103(1)(h)(ii) ("If fairness to the parties is not compromised, an agency may substitute one presiding officer for

_____

6. The relevant statutes remain the same.

another during any proceeding."). Ho could have but did not object to these roles under existing law at her hearing. Thus, Ho failed to preserve her first two procedural arguments for judicial review, and we therefore decline to disturb the Department's order on these bases.

B.    Prejudice

¶25    On judicial review of administrative proceedings, a petitioner bears the burden of demonstrating that she was substantially prejudiced. *Id.* § 63G-4-403(4); *see also Covey v. Covey*, 2003 UT App 380, ¶ 21, 80 P.3d 553 (explaining that the party seeking review "has the burden of demonstrating an error was prejudicial" (cleaned up)). "An error will be harmless if it is sufficiently inconsequential that there is no reasonable likelihood that the error affected the outcome of the proceedings." *Macfarlane v. Career Service Review Office*, 2019 UT App 133, ¶ 42, 450 P.3d 87 (cleaned up).

¶26    Here, Ho has failed to satisfy her burden of demonstrating substantial prejudice. There is no evidence anywhere in the record that the Board considered the prostitution charge in issuing its recommended order. In fact, in DOPL's presentation of its case, the word prostitution was uttered only once in a single reference to Ho's charge for prostitution during the opening statement. The topic was never mentioned again by DOPL.

¶27    And after Ho objected to the prostitution reference— outside the presence of the Board—the ALJ then directly instructed the Board "to completely disregard" and not rely upon the prostitution charge at all, noting that Ho stipulated that her license had been revoked. *See State v. Padilla*, 2018 UT App 108, ¶ 26, 427 P.3d 542 ("Curative instructions are ordinarily presumed on appeal to be effective." (cleaned up)). This presumptively effective instruction appears to have been dutifully followed as well because the Board's recommended order did not make any reference to the

charge.[7] Finally, all the members of the Board were members of the Board during the proceeding involving the prostitution charge, so the reference would not have been news to the Board members and thus was not reasonably likely to have changed how the Board assessed the hearing.[8]

¶28 Accordingly, because Ho has not persuaded us that she has been substantially prejudiced, and there is not an "appearance of unfairness . . . so plain that we are left with the abiding impression that a reasonable person would find the hearing unfair," *Nelson v. City of Orem*, 2013 UT 53, ¶ 36, 309 P.3d 237 (cleaned up), we decline to disturb the Department's order on this basis.

CONCLUSION

¶29 We conclude that Utah Code section 58-47b-102(6)(*l*) is not unconstitutional as Ho claims. We also conclude that Ho failed to preserve two of her due process arguments and failed to prove prejudice on her final due process argument. Accordingly, we decline to disturb the Department's order.

_____

7. Ho takes issue with the language the Board used in its final order: "[Ho] previously had a license to provide massage therapy, but such license had been revoked by action of the Board in a prior administrative proceeding." However, as is evident from the Board's finding, it did not even mention the prostitution charge. This in no way demonstrates Ho's claimed prejudice.

8. Again, although Ho knew and could have objected to the fact that these were the same Board members from her previous proceeding, she failed to do so and has not preserved the issue. *See supra* ¶¶ 22–24.