2023 UT App 87

# THE UTAH COURT OF APPEALS

JESSICA HO,
Appellant,
*v.*
DEPARTMENT OF COMMERCE, DIVISION OF OCCUPATIONAL AND
PROFESSIONAL LICENSING,
Appellee.

Opinion
No. 20210940-CA
Filed August 10, 2023

Third District Court, Salt Lake Department
The Honorable Kent R. Holmberg
No. 200907275

W. Andrew McCullough, Attorney for Appellant

Sean D. Reyes, Stanford E. Purser, and Laurie L.
Noda, Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and JOHN D. LUTHY concurred.

HARRIS, Judge:

¶1      Jessica Ho applied for a massage therapy license, but her request for an unrestricted license was denied by Utah's Division of Occupational and Professional Licensing (DOPL). She asked for judicial review of DOPL's decision and, after a bench trial, the district court sustained DOPL's refusal to give Ho an unrestricted license, but the court held that Ho was entitled to a probationary license subject to certain conditions. Ho now appeals, asserting that the court grounded its ruling, in material part, on evidence that Ho believes the court should not have considered. We reject Ho's arguments and affirm the court's ruling.

BACKGROUND

¶2 Ho first applied for a Utah massage therapy license in 2012. This initial application was conditionally denied because she "did not submit required education documentation" and therefore had an "incomplete transcript." The application was officially denied a few months later, when Ho did not submit the remaining documentation. In 2014, she submitted a second application, this time applying through an apprenticeship program, but this application was also conditionally denied because Ho "did not complete the apprenticeship," did not complete a required exam, and did not submit proper documentation. Shortly after the second conditional denial, DOPL investigated the apprenticeship and learned that Ho "had not been following the requirements for the apprenticeship." The person for whom Ho had been apprenticing told DOPL's investigator that he "was misled by [Ho] and that [she] submitted certain applications . . . without [his] knowledge, consent, . . . or authorization." Ho then "surrendered [her] massage apprenticeship license."

¶3 In 2015, Ho applied a third time for a massage therapy license, and this time she was successful. However, some two years later DOPL disciplined Ho after determining that she had engaged in "unprofessional conduct" in connection with providing massage therapy. At issue was a 2016 incident in which DOPL found that Ho agreed to provide "a happy ending"—a term DOPL defined as "an illicit sex act for hire"—to a "client" who turned out to be an undercover police officer. Ho was charged criminally and eventually convicted in connection with this incident, but the criminal conviction was later expunged. Separate from the criminal proceedings, however, Ho also faced administrative consequences related to the same incident: in April 2017, after an administrative hearing, DOPL revoked Ho's massage therapy license, banned Ho from applying for a new license for three years, and instructed her that, even after the three-year period had expired, it would not consider her

application unless she could "demonstrate that she has taken appropriate courses in the State of Utah regarding the statutes, rules and ethical standards applicable to massage therapists and can demonstrate . . . her familiarity with such matters."

¶4    In August 2017, just a few months after her license was revoked, Ho offered to provide, and then did actually provide, massage therapy services to a "client" who turned out to be a DOPL investigator. DOPL later found that Ho had practiced massage therapy without a license and had therefore "engaged in unlawful conduct." As a sanction, DOPL imposed upon Ho a $1,500 fine. Ho sought judicial review of the administrative order that imposed the fine; on review, we declined to disturb that order. *Ho v. Department of Com.*, 2020 UT App 37, 462 P.3d 808.

¶5    In May 2020, after her three-year ban had expired, Ho applied for reinstatement of her license. Among other questions, the application asked whether Ho had ever had a license "to practice a regulated profession denied" or conditioned in any way; Ho truthfully answered that question in the affirmative. Ho was represented by counsel in the application process, and counsel submitted a cover letter with the application in which he requested that Ho's licensure request "be placed on the agenda of the next Board meeting to discuss the conditions of her licensure."

¶6    DOPL put Ho's request on the agenda for the next meeting, and invited Ho and her attorney to participate in the meeting by telephone. At this meeting, DOPL's Board of Massage Therapy (Board) recommended that Ho be granted a probationary license that would, for a five-year period, be subject to conditions set forth in a Memorandum of Understanding (MOU), though Ho could apply for an unrestricted license after two and a half years. Among other conditions, Ho was required to meet with a Board representative "on a bi-monthly basis." But most significantly, Ho was permitted to "practice only under the direct supervision of a massage therapist licensed and in good standing" with DOPL and

who was "pre-approved" by the Board. Ho agreed to these terms at the meeting and, a few weeks after the meeting, signed the MOU. She now asserts that she agreed to these terms only because she believed—correctly, as it turned out—that the Board would deny her application outright if she did not.

¶7     After execution of the MOU, Ho submitted the name of one potential supervisor, a massage therapist who worked at a facility owned by Ho's son and who had a "prior licensing history." DOPL declined to approve this person as Ho's supervisor.

¶8     Instead of continuing to search for a suitable supervisor, Ho then requested, through counsel, that the MOU be abrogated, asserting that it was "obviously not going to be workable" for her. Ho indicated that she preferred that DOPL simply deny the application outright, which would allow her to appeal administratively and, if necessary, seek judicial review. DOPL agreed to abrogate the MOU, and the parties then executed a "non-disciplinary surrender stipulation and order," which noted that Ho "intends to be released from the requirements of the [MOU], reapply for licensure, and, if denied, pursue her rights of review and appeal." It also stated that the parties' stipulation was not to be construed as "a further finding of unprofessional or unlawful conduct, nor is it disciplinary action against [Ho]."

¶9     Soon thereafter, in August 2020, Ho submitted another application for an unrestricted massage therapy license. DOPL denied Ho's application, citing (among other grounds) Ho's previous "unprofessional conduct" in connection with the 2016 incident and her previous "unlawful conduct" of practicing massage therapy without a license in 2017. DOPL also mentioned the 2012 and 2014 application denials, as well as the events related to the execution and subsequent abrogation of the MOU. Ho appealed DOPL's decision to the Utah Department of Commerce (Department), which upheld DOPL's decision for similar reasons.

¶10   After exhausting her administrative remedies, Ho then filed a Complaint for Judicial Review in the district court, asking for a "trial de novo" and for a judicial determination, following that trial, that Ho was entitled to an unrestricted massage therapy license. A few months later, the district court held a one-day bench trial to consider Ho's claims. Ho called two witnesses to testify at the trial: herself and a DOPL representative. DOPL called one witness of its own. At trial, and in various pretrial motions, Ho asked the court not to consider certain evidence, including (1) any of her pre-2015 applications, (2) her criminal conviction stemming from the 2016 incident, (3) the 2017 incident in which she practiced massage therapy without a license, and (4) her actions in connection with the MOU. The court denied Ho's pretrial motions, and it allowed DOPL to present, at trial, evidence related to all four of the contested matters.

¶11   At the conclusion of the trial, the court took the matter under advisement and later held a telephone conference to announce its ruling.[1] In a written order memorializing that oral ruling, the court agreed with DOPL and the Department that Ho was not entitled to an unrestricted license, given her licensing and practice history. In connection with this determination, the court found—among other things—that Ho's "actions with respect to the MOU were unreasonable and not in good faith." However, the court ruled that Ho "should be granted a probationary license" under conditions similar to those set out in the MOU, including the requirement that Ho be supervised by a licensed massage therapist approved by DOPL. The court set the "probationary period" at three years, though Ho would be entitled to "reapply for an unrestricted license after 1.5 years."

---

1. The record submitted to us includes neither a transcript of the one-day trial nor a transcript of the court's oral ruling.

ISSUE AND STANDARDS OF REVIEW

¶12 Ho now appeals, asserting primarily that the court, in the process of arriving at its ruling, improperly considered several items of evidence. To the extent Ho's challenge calls into question the district court's interpretation of statutes, rules, or regulations, we review such determinations without deference. *See Scott v. Benson*, 2021 UT App 110, ¶ 16, 501 P.3d 1148 ("Questions of statutory interpretation are questions of law; we review a district court's statutory interpretation decisions for correctness, affording them no deference."), *aff'd*, 2023 UT 4, 529 P.3d 319 (Utah 2023). But to the extent Ho's challenge calls into question the court's decision to admit a challenged piece of evidence, we review such decisions only for abuse of discretion. *See State v. Cuttler*, 2015 UT 95, ¶ 12, 367 P.3d 981 ("We afford district courts a great deal of discretion in determining whether to admit or exclude evidence and will not overturn an evidentiary ruling absent an abuse of discretion." (quotation simplified)).

ANALYSIS

¶13 Under Utah law, DOPL "may refuse to issue a license to an applicant" who has engaged in "unprofessional conduct" or "unlawful conduct." Utah Code § 58-1-401(2)(a), (b). Unprofessional conduct includes, among other things, "violating any statute, rule, or order regulating a profession under this title," as well as any "conduct that results in conviction . . . or a plea of guilty or nolo contendere that is held in abeyance pending the successful completion of probation with respect to a crime that . . . bears a substantial relationship to the . . . applicant's ability to safely or competently practice the profession." *Id.* § 58-1-501(2)(a)(i), (iii). Unlawful conduct includes "practicing or engaging in . . . any profession requiring licensure" without the proper licensure. *Id.* § 58-1-501(1)(a). In previous proceedings, DOPL found that Ho had engaged in both unprofessional conduct (related to the 2016 incident) and unlawful conduct (related to the

2017 incident). DOPL's findings regarding these earlier incidents are not challengeable in this appeal; understandably, Ho makes no effort here to contest those underlying findings.

¶14  In situations like this one, where an applicant "is not automatically disqualified from licensure pursuant to statute" but "has past unlawful or unprofessional conduct," pertinent regulations provide a list of factors that "are relevant to a licensing decision." Utah Admin. Code R156-1-302. Those factors include the following:

- any "aggravating circumstances," including any "prior record of disciplinary action, unlawful conduct, or unprofessional conduct," any "dishonest or selfish motive," any "pattern of misconduct," and any "lack of good faith to make restitution or to rectify the consequences of the misconduct involved";

- "the degree of risk that a conduct will be repeated";

- "results of previously submitted applications, for any regulated profession or occupation";

- "results from any action, taken by any professional licensing agency"; and

- "any other information the Division or the [B]oard reasonably believes may assist in evaluating the degree of threat or potential threat to the public health, safety, or welfare."

*Id.* R156-1-302(2)(d), (j), (k), (n); *see also id.* R156-1-102(2)(a), (b), (c), (i) (definition of "aggravating circumstances"). Ho does not contest DOPL's assertion that this regulation applies here.

¶15  Despite the apparent clarity of this regulation, Ho asserts that the district court, in the context of the trial de novo,

considered and took into account four pieces of evidence that should have been excluded: (1) her application history prior to obtaining her license in 2015; (2) the 2016 conduct that led to the revocation of her license and a now-expunged criminal conviction; (3) the 2017 conduct that led to the $1,500 fine; and (4) Ho's actions regarding the MOU. For the reasons discussed below, we disagree with Ho's contentions, and conclude that governing statutes, regulations, and evidentiary rules permitted the district court to consider all of the challenged matters.

## A. Ho's Pre-2015 Application History

¶16    Ho first claims that the court should not have considered her application history from prior to 2015, including her two failed applications from 2012 and 2014. Ho claims that "[a]ny glitches which might have occurred prior to the issuance of [Ho]'s massage therapy license were erased when her license was granted," thus rendering them irrelevant to the current inquiry. Ho's assertion is incorrect.

¶17    As already noted, the governing regulation provides that "results of previously submitted applications" are "relevant to a licensing decision." Utah Admin. Code R156-1-302(2)(j). Ho's 2012 and 2014 applications are "previously submitted applications" for a massage therapy license, and therefore the results of those applications may be considered in connection with Ho's current application for licensure. Ho makes no meaningful argument to the contrary.

¶18    Instead, she asserts that any probative value that her pre-2015 application history might have is substantially outweighed by a risk of unfair prejudice. *See* Utah R. Evid. 403.[2] Under

_____

2. When district courts "review by trial de novo" any "final agency actions resulting from informal adjudicative proceedings," the "Utah Rules of Evidence apply" to the review

(continued…)

applicable rules of evidence, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." *Id.* But that is not the case here. The results of Ho's pre-2015 applications have *some* probative value: they are at least potentially indicative of the seriousness with which Ho takes the licensure process and of her suitability for a license. And while the probative value of this somewhat-dated evidence might be fairly low, we see little if any risk of unfair prejudice from consideration of this evidence, and Ho does not identify any. "All effective evidence is prejudicial in the sense of being damaging to the party against whom it is offered." *State v. Barriga*, 2019 UT App 178, ¶ 16, 454 P.3d 63 (quotation simplified). "Unfair prejudice within the context of rule 403 means an undue tendency to suggest decision on an improper basis." *Id.* (quotation simplified). And consideration of Ho's pre-2015 application history does not lead the factfinder to make its decision on "an improper basis," since the results of previous applications are by definition "relevant to a licensing decision." Utah Admin. Code R156-1-302(j). Certainly, the risk of unfair prejudice does not *substantially* outweigh whatever probative value this evidence might have.

¶19 Moreover, and in any event, the district court did not appear to rely on this pre-2015 evidence in its decision. While it expressly noted certain evidence it thought was material, it made no mention of Ho's pre-2015 application history. For this reason, even if we were to assume, for purposes of the discussion, that the court improperly admitted evidence of Ho's pre-2015 applications, Ho cannot show that any such error was harmful to her. *See State v. Bowden*, 2019 UT App 167, ¶ 20, 452 P.3d 503 ("Even if we were to conclude that the evidence here was improperly admitted, that would not decide the issue. We still

---

proceedings. *See* Utah Code § 63G-4-402(1), (3). Neither party suggests that the Utah Rules of Evidence were inapplicable to evidentiary decisions the district court made during the trial.

would have to determine whether the error was harmful." (quotation simplified)), *cert. denied*, 458 P.3d 749 (Utah 2020). Thus, Ho cannot show that the court's consideration of this evidence "reasonably affect[ed] the likelihood of a different" result. *See id.* ¶ 26.

¶20 Accordingly, we do not see any reversible error in the court's consideration of Ho's pre-2015 application history. We therefore reject Ho's first argument.

## B. The 2016 Incident

¶21 Next, Ho claims that the court should not have considered the 2016 incident, the one that led not only to the administrative revocation of Ho's massage therapy license but also to a criminal conviction that was later expunged. For purposes of our discussion, we assume, without deciding, the soundness of Ho's assertion that—due to the subsequent expungement—the court was not permitted to consider the fact that Ho had been convicted of a crime related to the 2016 incident.[3] But even assuming the

---

3. DOPL asserts, with apparent colorable basis, that it is one of a select group of government agencies that was—at least during the time period relevant here (prior to a 2023 statutory change)—permitted to consider even expunged criminal convictions. *See* Utah Code § 77-40a-403(2)(b)(iv) (2022) (stating that "the Department of Commerce," which includes DOPL, "may receive information contained in expunged records upon specific request"). Other agencies also apparently allowed to receive and consider "information contained in expunged records" include (a) the Board of Pardons and Parole, (b) Peace Officer Standards and Training, and (c) the Commission on Criminal and Juvenile Justice "for purposes of investigating applicants for judicial office." *Id.* § 77-40a-403(2)(b)(i), (ii), (vii). Because we determine that the district court's approach—considering the underlying

(continued…)

soundness of this assertion, the court was permitted to consider the underlying conduct as well as DOPL's administrative findings and penalties related to the incident.

¶22   The district court, in its written ruling, followed these principles exactly: it did not consider the fact that Ho had been criminally convicted, but it *did* consider "the facts and circumstances underlying DOPL's decision to revoke" Ho's license. Indeed, it correctly noted that "[t]he expungement of [Ho]'s criminal record does not invalidate DOPL's action in revoking [Ho]'s license, nor remove from the [c]ourt's consideration the underlying facts relating to DOPL's decision to revoke [Ho]'s license in 2017." We discern nothing improper with the court's consideration of the administrative findings and related disciplinary action.

¶23   As already noted, the governing regulation allows the court to consider the "results from any action, taken by any professional licensing agency." *See* Utah Admin. Code R156-1-302(2)(k). The revocation of Ho's license is surely an action taken by a professional licensing agency, so the court was able to consider the revocation, and the reasons for it, in making its decision. Indeed, it is hard to imagine anything more relevant to a licensing decision than whether, and why, an applicant's previous license was revoked.

¶24   And contrary to Ho's assertion, the expungement statutes do not prohibit DOPL or the court from considering the reasons for the previous license revocation. Those statutes clarify that an expungement order "may not . . . affect the enforcement of any order or findings issued by an administrative body pursuant to

---

facts and the administrative findings, but not any criminal conviction—was proper, we need not decide, in the context of this case, whether DOPL was permitted to obtain and consider records related to Ho's expunged criminal conviction.

the administrative body's lawful authority prior to issuance of the expungement order." Utah Code § 77-40a-401(7)(b).

¶25    So, even assuming, for purposes of the discussion, that the court was not permitted to take Ho's criminal conviction into account, the court was nevertheless permitted to consider the conduct underlying the 2016 incident, as well as the findings from the administrative proceedings that occurred in the wake of that incident. The court's handling of this issue was entirely proper.

### C.  The 2017 Incident

¶26    Ho next claims that the court should not have considered the 2017 incident in which Ho was found to have practiced massage therapy without a license. But again, the court can consider "results from any action, taken by any professional licensing agency." Utah Admin. Code R156-1-302(2)(k). The administrative findings and related discipline resulting from this incident certainly fit into this category.

¶27    Ho pushes back, arguing that the court was statutorily forbidden from considering the 2017 incident and related findings. In particular, she points to a statute barring DOPL from assessing "licensure sanctions . . . through a citation." Utah Code § 58-1-502(2)(c). As Ho sees it, this statute means that "an administrative citation and fine may not be used as a vehicle to take action to deny, suspend or revoke a professional license." We find Ho's interpretation of this statute unpersuasive.

¶28    In interpreting a statute, we begin with its text. *State v. Barrett*, 2005 UT 88, ¶ 29, 127 P.3d 682. "We read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Id.* (quotation simplified). "Where statutory language is plain and unambiguous," we will look no further. *Bryner v. Cardon Outreach, LLC*, 2018 UT 52, ¶ 9, 428 P.3d 1096 (quotation simplified). "A statute susceptible to competing interpretations

may nevertheless be unambiguous if the text of the act as a whole, in light of related statutory provisions, makes all but one of those meanings implausible." *Id.* ¶ 10 (quotation simplified).

¶29 The text of the statute on which Ho relies prevents DOPL from "assess[ing]" "licensure sanctions . . . through a citation." Utah Code § 58-1-502(2)(c). "Through," in this context, is defined as "by means of." *Through*, Merriam-Webster, https://www.merriam-webster.com/dictionary/through [https://perma.cc/KTV7-VBGG]. Thus, the statute prevents DOPL from imposing a licensure sanction by means of a citation. But no such thing happened here; during the citation proceedings following the 2017 incident, Ho did not have a license—indeed, that was the problem with her actions—and thus no licensure sanctions were (or could have been) imposed. Instead, DOPL imposed a $1,500 fine.

¶30 The text of the statute, by contrast, does not prohibit DOPL, in a *subsequent* licensure proceeding, from considering the fact that Ho received a citation and a fine some years earlier. Any licensure sanction—including, potentially, denial of a licensure application—is in that context imposed not "through a citation" but, instead, by means of the licensure proceeding itself.

¶31 This interpretation comports not only with the text of the relevant provision, but also with other sections of the same statute that expressly allow DOPL to consider citation history as part of a licensure decision. For example, our legislature has instructed DOPL that "[t]he failure of an applicant for licensure to comply with a citation after it becomes final is a ground for denial of license." Utah Code § 58-1-502(2)(h). In addition, DOPL is statutorily authorized to "refuse to issue or renew, suspend, revoke, or place on probation the license of a licensee who fails to comply with a citation after it becomes final." *Id.* § 58-1-502(2)(g). And finally, we again note the language of governing regulations, which allows DOPL, in a situation like this one, to consider the

"results from any action, taken by any professional licensing agency." Utah Admin. Code R156-1-302(2)(k). We agree with DOPL that, under Ho's proffered interpretation of section 58-1-502(2)(c), all these other statutory and regulatory provisions "would be nonsensical and largely inoperable."

¶32    For these reasons, we do not consider Ho's interpretation to be a plausible reading of the statute's plain language. Nothing in section 58-1-502(2)(c) prevented the court from considering the conduct related to Ho's 2017 citation in making its licensing determination. As noted, the court was expressly authorized to consider that citation. Thus, the court did not err in considering the 2017 incident and related citation.

### D.  Ho's Actions Regarding the MOU

¶33    Finally, Ho takes issue with the court's handling of evidence related to her behavior regarding the MOU, and her challenge here takes two forms. First, she appears to challenge the merits of the court's finding that her actions in this regard were "unreasonable and not in good faith." Second, she asserts that the court should not even have considered the evidence related to the MOU at all. We reject both of Ho's assertions.

¶34    First, to the extent that Ho believes the substance of the court's findings were in error, Ho cannot successfully challenge those findings because she failed to provide us with a transcript of either the trial or the court's oral ruling. "The appellant is required to include in the record a transcript of all evidence relevant to a finding or conclusion that is being challenged on appeal . . . ." *Gines v. Edwards*, 2017 UT App 47, ¶ 21, 397 P.3d 612 (quotation simplified), *cert. denied*, 398 P.3d 52 (Utah 2017). "[I]n the absence of a transcript of a crucial proceeding, we will presume that a trial court's decision is reasonable" and "supported by the evidence." *Id.* Here, Ho did not include a transcript of the bench trial, nor did she include a transcript of the court's oral ruling following the trial. We therefore do not know

exactly what evidence the court considered in reaching its finding, and we thus have no accurate way to evaluate, on appeal, the merits of that finding. Accordingly, we presume the regularity of the proceedings, including the soundness of the court's finding regarding the reasonableness of Ho's actions related to the MOU.

¶35 Next, Ho asserts that—regardless of the soundness of the court's ultimate finding—the court should not have even considered her actions related to the MOU. As she frames the issue, the MOU was "abrogated" through the "non-disciplinary surrender stipulation and order," and the parties agreed that the MOU should not be considered to be "a further finding of unprofessional or unlawful conduct, nor is it disciplinary action against" Ho. All of this is true, as far as it goes: we assume, for purposes of the discussion, that the court was barred from equating Ho's abrogation of the MOU with "unprofessional or unlawful conduct." But there is no indication in the record that the court so concluded.

¶36 To be sure, the court did consider—at least in passing—Ho's conduct related to the MOU. Yet we discern nothing improper in these actions on the part of the court. The MOU was the result of a licensure application Ho submitted to DOPL in May 2020; after discussing Ho's application at a meeting attended by Ho and her attorney, DOPL acted on that May application by awarding Ho a provisional probationary license subject to the terms and conditions of the MOU. A few weeks later, Ho asked that the MOU be abrogated, thus terminating the proceedings related to Ho's May 2020 license application. And in the abrogation stipulation, Ho acknowledged that she "intends to be released from the requirements of the [MOU], reapply for licensure, and, if denied, pursue her rights of review and appeal."

¶37 In keeping with these intentions, Ho submitted a new application just weeks later, in August 2020. That is the licensure application at issue in this appeal. And as already noted,

governing regulations allow DOPL, in connection with the August 2020 licensure application, to consider the "results of previously submitted applications." Utah Admin. Code R156-1-302(2)(j). Thus, for this reason alone, DOPL—and, by extension, the court in a trial de novo—was permitted to consider the results of the May 2020 application, the one that resulted in the MOU and ended with the abrogation stipulation.[4]

¶38 Moreover, even if we were to assume, for purposes of the discussion, that the court did improperly consider Ho's MOU-related conduct, Ho would not be able to show that this error was harmful. "We will not reverse a judgment merely because there may have been error; reversal occurs only if the error is such that there is a reasonable likelihood that, in its absence, there would have been a result more favorable to the complaining party." *Trapnell & Assocs., LLC v. Legacy Resorts, LLC*, 2020 UT 44, ¶ 62 n.8, 469 P.3d 989 (quotation simplified). In our view, there is no reasonable likelihood of a different result in a trial in which the court does not consider Ho's MOU-related conduct. As we read the record, the MOU was only one rather secondary part of the evidence the court considered in making its determination. The

---

4. We offer no opinion as to whether the court would have been able to consider the MOU-related conduct under other statutory or regulatory provisions. For instance, it is permissible to consider "aggravating circumstances," including "lack of good faith to make restitution or to rectify the consequences of the misconduct involved." Utah Admin. Code R156-1-102(2)(i), -302(2)(a). It is also permissible to consider "any other information the Division or the [B]oard reasonably believes may assist in evaluating the degree of threat or potential threat to the public health, safety, or welfare." *Id.* R156-1-302(2)(n). But because the conduct squarely falls within the "previously submitted applications" category, *see id.* R156-1-302(2)(j), we need not further concern ourselves with whether other provisions might also allow the court to consider this conduct.

two most consequential pieces of evidence before the court were the 2016 incident—in which DOPL revoked Ho's license for agreeing to commit an "illicit sex act" in connection with providing massage therapy—and the 2017 incident—in which Ho was found to have practiced massage therapy without a license. Given those two items of evidence, we consider it extremely unlikely that the court would have determined that Ho was entitled to an unrestricted license, even if it had not considered her 2020 conduct related to the MOU.

¶39    In short, we discern no improprieties in the court's consideration of Ho's MOU-related conduct.

CONCLUSION

¶40    Under applicable statutes, regulations, and evidentiary rules, the district court was permitted to consider Ho's application history and administrative disciplinary record in making its decision. We therefore reject Ho's assertions that the court improperly considered certain items of evidence in reaching its determination that Ho was not entitled to an unrestricted license.

¶41    Affirmed.

_____